No. 15-1364

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

SARA L. FOX,

*Plaintiff - Appellant*,

v.

LELAND VOLUNTEER FIRE/
RESCUE DEPARTMENT, INC. *et al.*,

*Defendants - Appellees.*

_____

On Appeal from the
United States District Court for the
Eastern District of North Carolina, Southern Division

_____

**BRIEF OF THE APPELLANT**

_____

Thomas A. Woodley
Sara L. Faulman
WOODLEY & McGILLIVARY, LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
taw@wmlaborlaw.com
slf@wmlaborlaw.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 15-1364          Caption: Fox v. Leland Volunteer Fire/Rescue Dep't Inc. *et al.*

Pursuant to FRAP 26.1 and Local Rule 26.1, Sara Fox, appellant makes the

following disclosure:


1. Is party/amicus a publicly held corporation or other publicly held entity?  NO

2. Does party/amicus have any parent corporations?  NO

3. Is 10% or more of the stock of a party/amicus owned by a publicly held
   corporation or other publicly held entity?  NO

4. Is there any other publicly held corporation or other publicly held entity that has
   a directly financial interest in the outcome of the litigation?  NO

5. Is party a trade association?  NO

6. Does this case arise out of a bankruptcy proceeding?  NO


/s/ Sara L. Faulman
Thomas A. Woodley
Sara L. Faulman
WOODLEY & McGILLIVARY, LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Facsimile: (202) 452-1090
taw@wmlaborlaw.com
slf@wmlaborlaw.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................... i

TABLE OF AUTHORITIES ........................................................ iv

JURISDICTIONAL STATEMENT ...............................................1

STATEMENT OF THE ISSUES PRESENTED ...............................1

STATEMENT OF THE CASE.......................................................2

STATEMENT OF FACTS............................................................3

    A.  *Fox Was a Good Employee* ................................................4

    B.  *After Her Promotion to Lieutenant, Fox Was Harassed and Discriminated Against Based on Her Sex* ...................5

    C.  *Leland Maintains Specific Policies Meant to Address Issues of Discipline, Poor Performance, and Harassment* ...................9

    D.  *Chief Grimes and Leland Fired Fox Because She Made Formal Complaints of the Sex Discrimination* ...................... 11

    E.  *Fox Exhausted Her Administrative Remedies* ....................... 13

    F.  *Defendants' Alleged Justification for Terminating Fox Is Pretextual*.. 13

        1.  **Fox's June 2010 Performance Evaluation Was Inaccurate**............. 14

        2.  **Fox Successfully Completed Her Probationary Period** ................... 15

        3.  **Leland and Chief Grimes Have Engaged in a Systemic Effort to Backfill Fox's Employment Records to Justify Their Unlawful Actions** ...................................... 16

        4.  **Chief Grimes' Inconsistent Statements Establish Genuine Disputes Regarding Material Facts** .................................... 17

**SUMMARY OF THE ARGUMENT** ................................................... 19

**STANDARD OF REVIEW** ............................................................ 21

**ARGUMENT** ............................................................................ 21

I.   **The District Court Erred in Concluding on Summary
Judgment that Fox Could Not Succeed on a Claim of
Retaliation Under Title VII** ............................................... 21

   A.  *Fox's Complaints of Discrimination Constitute Protected Activity* ...... 23

   B.  *Fox's Termination Constitutes an Adverse Action* ................................ 27

   C.  *Fox's Complaints Caused Chief Grimes and
Leland to Terminate Her Employment* ................................ 27

   D.  *Fox Demonstrated that Defendants' Purported Reasons
for Terminating Her Employment Were Pretext* .................... 29

     1.  **The District Court Failed to Consider the
Facts in the Light Most Favorable to Fox** ......................... 32

     2.  **The District Court Ignored Fox's Demonstration
that Defendants Invented False Charges** .......................... 33

     3.  **The District Court Ignored Evidence that
Fox Had Strong Job Performance** ................................. 34

     4.  **The Defendants' Efforts to "Backfill" Fox's Personnel
File Are Further Indicia of Pretext** ................................ 36

     5.  **The District Court Erroneously Found that Fire
Chief Grimes' Claims as to When He Decided to
Terminate Fox Were "Undisputed"** ................................ 37

     6.  **The Court Ignored Defendants Admitted Duty to Advise
Employees of Performance Issues When They Occur** ............ 39

**II.** **Fox Demonstrated a *Prima Facie* Case of Retaliation for Exercising Her First Amendment Rights** ...................................... 40

   ***A.*** ***Fox's Petition, Which Sought to Correct Instances of Sexual Harassment and Require Department-Wide Diversity Training, Presented a Matter of Public Concern*** ...................................... 42

   ***B.*** ***Fox's Right to Seek Redress for Unlawful Discrimination Based on Gender Outweighs Any Purported Department Interest*** .................. 44

   ***C.*** ***Fox's Petition Was the Motivating Factor in Defendants' Decision to Terminate Her Employment*** ................................... 46

**III.** **Fox Has Demonstrated a *Prima Facie* Case of Hostile Work Environment under Both Title VII and 42 U.S.C. § 1983** .................. 49

   ***A.*** ***Fox Demonstrated She Was Subjected to Harassment Based on Her Sex*** ................................................ 50

   ***B.*** ***Fox Was Subjected to Severe and Pervasive Harassment, Altering Her Conditions of Employment, and Creating a Hostile Work Environment*** ...................................... 51

   ***C.*** ***The District Court Admittedly Ignored Evidence that Would Enable a Reasonable Jury to Conclude Fox Had Been Subjected to a Hostile Work Environment*** ........................... 53

**CONCLUSION** ..................................................................... 54

**REQUEST FOR ORAL ARGUMENT** .............................................. 55

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)..................................................21

*Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011)................................42, 43

*Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) .............19, 27

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) .....................................28

*Connick v. Myers*, 461 U.S. 138 (1983)...................................................................42

*Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979).....................................43

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) .....................................................52

*McDonald v. Smith*, 472 U.S. 479 (1985)..................................................................41

*Onacle v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998)...............................50, 52

*Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*,
   391 U.S. 563 (1968) ..........................................................................................41, 43

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000)..................................30

*Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981) ...............................30

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014)............................................................21, 33

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013)........................22, 27

**Circuit Court Cases**

*Adams v. Trs. of the Univ. of N. Carolina-Wilmington*, 640 F.3d 550
   (4th Cir. 2011) .........................................................................................................21

*Arvinger v. Mayor of Baltimore*, 862 F.2d 75 (4th Cir. 1988) ...............................43

*Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994) .....................................................43

*Bhella v. Surjit*, 91 F. App'x 935 (4th Cir. 2004) ...................................................24

*Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013)....................................................... 46

*Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536 (4th Cir. 2003).................... 23

*Burgess v. Bowen*, 466 F. App'x 272 (4th Cir. 2012) ............................................ 27

*Campbell v. Galloway*, 483 F.3d 258 (4th Cir. 2007) ....................................... 42, 43

*Coleman v. Loudoun County Sch. Bd.*, 294 F. App'x 778 (4th Cir. 2008)............. 24

*Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179 (4th Cir. 2000)........ 49, 52

*Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424 (1st Cir. 2000) ................... 30

*EEOC v. Ethan Allen, Inc.*, 44 F.3d 116 (2d Cir. 1994) ......................................... 31

*EEOC v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001) .............................. 30

*Goulart v. Meadows*, 345 F.3d 239 (4th Cir. 2003) ............................................... 49

*Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766 (4th Cir. 1997).............................. 27

*Hoyle v. Freightliner, LLC*, 650 F.3d 321 (4th Cir. 2011) .............................. 51, 52

*Jacobs v. North Carolina Administrative Office of the Courts*,
  No. 13-2212, 2015 U.S. App. LEXIS 3878 (4th Cir. Mar. 12, 2015)..... 32, 33, 38

*King v. Rumsfeld*, 328 F.3d 145 (4th Cir. 2003)..................................................... 22

*Kirby v. City of Elizabeth City*, 388 F.3d 440 (4th Cir. 2004)................... 41, 42, 43

*Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253 (4th Cir. 1998) ......... 23, 27

*Lefemine v. Wideman*, 672 F.3d 292 (4th Cir. 2012)............................................. 21

*McCray v. Pee Dee Reg'l Trnsp. Auth.*, 263 F. App'x 301 (4th Cir. 2008)........... 50

*McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998)................................................. 41, 44

*Mereish v. Walker*, 359 F.3d 330 (4th Cir. 2004).................................................. 30

*Mooney v. Lafayette County Sch. Dist.*, 538 F. App'x 447 (5th Cir. 2013) ........... 46

*Morrison v. Garraghty*, 239 F.3d 648 (4th Cir. 2001) .......................................... 49

*Mosby-Grant v. City of Hagerstown*, 630 F.3d 326 (4th Cir. 2010) ..................... 49

*Ocheltree v. Scollon Prods. Inc.*, 335 F.3d 325 (4th Cir. 2003) ............................ 50

*Okoli v. City of Baltimore*, 648 F.3d 216 (4th Cir. 2011) ........................................ 23

*Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989) ........................................ 51

*Pepper v. Precision Valve Corp.*, 526 F. App'x 335 (4th Cir. 2013) .................... 28

*Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004) ............................................ 22, 28

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006) ......... 45

*Rochon v. Gonzalez*, 438 F.3d 1211 (D.C. Cir. 2006) ............................................ 27

*Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985) ......................... 24

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001) ............................. 52

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) ............................. 41

*Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160 (6th Cir. 1996) .................... 30

*Tinsley v. First Union Nat'l Bank*, 155 F.3d 435 (4th Cir. 1998) .......................... 28

*Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808 (10th Cir. 2000) ................ 30

*Wagner v. Wheeler*, 13 F.3d 86 (4th Cir. 1993) ..................................................... 46

*Wesley v. Arlington County*, 354 F. App'x 775 (4th Cir. 2009) ............................. 31

*Worrell v. Bledsoe*, No. 95-2816, 1997 U.S. App. LEXIS 6264
   (4th Cir. Apr. 3, 1997) ........................................................................................ 46

**District Court Cases**

*Stoner v. Ark. Dep't of Corr.*, 983 F. Supp. 2d 1074 (E.D. Ark. 2013) ................ 46

**Constitution**

U.S. Const. amend. I .................................................................................................. 41

**Statutes**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

42 U.S.C. § 1983 ....................................................................... 1, 2, 3, 20

42 U.S.C. § 2000e ............................................................................... 1, 2

42 U.S.C. § 2000e-2 ............................................................................... 49

42 U.S.C. § 2000e-3 ........................................................................... 21, 23

42 U.S.C. § 2000e-5 ..............................................................................1

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................. 21

Fed. R. Civ. P. 56 Advisory Committee's Note (1963) .......................................... 32

## JURISDICTIONAL STATEMENT

This appeal arises from the summary judgment ruling and final judgment of the United States District Court for the Eastern District of North Carolina, Southern Division, issued March 11, 2015. The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Plaintiff-Appellant Sara Fox filed a timely notice of appeal on April 8, 2015. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the district court erred in concluding on summary judgment that plaintiff-appellant Fox failed to state a claim for retaliation under Title VII, 42 U.S.C. §§ 2000e *et seq.*?

2.      Whether the district court erred in concluding on summary judgment that plaintiff-appellant Fox failed to state a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983?

3.      Whether the district court erred in concluding on summary judgment that plaintiff-appellant Fox failed to state a claim for hostile work environment under Title VII, 42 U.S.C. §§ 2000e *et seq.*?

4.      Whether the district court erred in concluding on summary judgment that plaintiff-appellant Fox failed to state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983?

5.      Whether the district court erred in entering summary judgment when it failed to treat as true the facts alleged by plaintiff-appellant Fox?

## STATEMENT OF THE CASE

Plaintiff-Appellant Sara Fox ("Fox" or "Appellant"), was employed by Leland Volunteer Fire/Rescue Department, Inc. ("Leland" or "Department") as a Lieutenant until January 2011, when she was terminated in retaliation for her repeated complaints of gender discrimination and harassment. After exhausting her administrative remedies, Fox brought this action in December 2012, alleging violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and 42 U.S.C. § 1983 as a result of being subjected to a hostile work environment based on her gender and being terminated in retaliation for filing complaints concerning the Department's widespread discriminatory treatment.

Following discovery, the Department and John Grimes (collectively referred to hereinafter as "Defendants") moved for summary judgment, claiming that Fox could not demonstrate that she had been subjected to a hostile work environment or that she was terminated in retaliation for complaining about the discriminatory treatment. Fox opposed their motion and demonstrated that genuine disputes of material facts existed that precluded the district court from granting summary judgment.

On March 11, 2015, the district court granted the Defendants' motion for summary judgment. *See* JA705-37. The court erroneously held that Fox failed to demonstrate that the harassment to which she was subjected was based on her gender, that the harassment rose to the level of being severe and pervasive, or that she was terminated in retaliation for filing complaints about that harassment. JA727-37. The court also erroneously held that Fox failed to demonstrate that the purported non-discriminatory reason the Defendants put forth for terminating her was mere pretext. JA737. In so holding, the district court failed to consider the evidence presented in the light most favorable to Fox and instead made credibility determinations on genuine disputes of material fact in favor of the Department and Grimes, in violation of clear Fourth Circuit precedent. Thus, in failing to consider facts in the light most favorable to Fox — the non-moving party — the district court erred by failing to find that Fox had presented evidence supporting a *prima facie* case for her hostile work environment claims and her retaliation claims under both Title VII and 42 U.S.C. § 1983. *See* JA705-37.

## STATEMENT OF FACTS

Leland provides fire protection and emergency medical services to Brunswick County and, through mutual aid agreements, New Hanover, Pender, Bladen, and Columbus Counties. JA74-75. Leland is run by the Fire Chief, John Grimes, in collaboration with the Board of Directors. JA72-73, 76. The Board is

3

comprised of seven members, JA76; the Fire Chief is not a member of the Board, JA77.[1]

Leland employs 19 full-time, or career, positions as well as between 85-90 volunteers.  JA81.  The chain of command is as follows: President of the Board of Directors, the Board of Directors, Fire Chief who reports to the Board President, Assistant Chief, Career Training Captain, Volunteer Captain, eight Lieutenants (four of whom are volunteer), career fire fighters and emergency medical technicians ("EMTs"), and volunteer fire fighters and EMTs.  JA86-90.

### A.    *Fox Was a Good Employee*

Sara Fox began working at Leland in July of 2008.  JA377.  She was originally hired as a fire fighter/paramedic and enjoyed a strong working relationship with her shift.  JA377.  According to her immediate supervisor, Assistant Chief Ronald Hayes, Fox was very professional in her service to the public and the Department; accepted direction, supervision and constructive criticism in a positive manner; and was "a great employee and a joy for the whole shift to work with."  JA350-51.

In June 2009, following a successful first year with the Department, Fox applied for a promotion to lieutenant.  As part of that process, Fox participated in an oral interview, agility test, and an "in-box scenario" which measures how an

---

[1] Notably, Diane Grimes, who is Chief Grimes' wife, is a member of the Leland Board of Directors.  JA78-80.

employee prioritizes a set of tasks. JA120-121. Fox successfully completed the promotion examination and ranked very high on the promotional list. JA122. The Leland Board ultimately approved Fox's promotion, and Fox became Leland's first career female officer. JA120, 122, 377.

Assistant Chief Hayes admits that, as a Lieutenant, Ms. Fox "work[ed] well with her supervisory staff and accept[ed] direction with little to no hesitation." JA354. Assistant Chief Hayes also admits that if Fox did not understand or agree with direction provided by her supervisor, she was respectful with her questions and would offer alternatives in a constructive manner, that her questions were beneficial, and that he himself "learned a lot from Ms. Fox," including from her time as a lieutenant. JA354, 362-63.

### B.   *After Her Promotion to Lieutenant, Fox Was Harassed and Discriminated Against Based on Her Sex*

Almost immediately after Fox was promoted to lieutenant, Leland employees and Chief Grimes began treating her differently than male lieutenants. JA377. For example, although a lieutenant's job responsibilities are much greater than that of a fire fighter/paramedic, neither the Department nor Chief Grimes provided Fox with any training or information on what her duties would entail. JA117-19, 128-29, 352, 378. They denied Fox a log-in to the lieutenant's computer for approximately one month despite her requests for a log-in and the need for access to perform her job duties. JA127, 378. Additionally, after Fox

received an erroneous performance evaluation, Chief Grimes never granted her a meeting to discuss her rebuttal, even though the Department previously allowed a male employee to do just that. JA150-51, 384.

Similarly, Chief Grimes denied Fox's request that he provide her the same assistance on her Fire Officer I certification that he gave to a male lieutenant. JA378. Chief Grimes ordered Fox to complete and distribute daily assignment lists to her shift, an additional task no male lieutenant was required to perform. JA378. On multiple occasions, Chief Grimes purposefully bypassed Fox and assigned members of Fox's shift to perform work without first letting her know, causing her engine to be short-staffed. JA380-81. Additionally, contrary to Leland policy, and unlike her male counterparts, Chief Grimes prohibited Fox from presenting the members of her shift with the performance evaluations she prepared for them. JA147, 378.

In addition to being treated differently than her male counterparts by Leland and Chief Grimes, thus fostering an atmosphere of hostility, Fox was continuously subjected to disrespect and insubordination by the male fire fighters assigned to her shift, and by several of the male lieutenants. JA378. For example, shortly after Fox was promoted, her assistant, Relief Shift Supervisor ("RSS") Jason Thornton, told other Leland employees that Fox had only been promoted because of her "plumbing," clearly referring to her sex. JA378. Lieutenant Jason Williamson

also told other Brunswick County employees that Fox should not have been promoted. JA378. Likewise, Lieutenant Christopher Hunt, who Fox had been informed did not believe women should serve in the fire service, frequently disparaged Fox to other employees after her promotion. JA378-79, 259-60.

The male fire fighters' harassment went beyond comments. RSS Jason Thornton avoided interacting with Fox during their shifts even though he was assigned as her assistant, regularly refused to perform assigned tasks, and would frequently bypass the chain of command and go directly to Chief Grimes to complain about Fox's decisions. JA379. Despite Defendants' admission that this type of conduct undermined Fox's authority and could support disciplinary action, when Fox approached both Chief Grimes and Assistant Chief Hayes to discuss these problems, Chief Grimes told Fox not to issue any discipline to Jason Thornton, but to give him time to warm up to her. JA123-125, 141, 379. After a Department-wide shift change, Jason Thornton was replaced by his brother Robert ("RJ") Thornton. JA126, 380. He, along with two of his co-workers, Nathaniel ("Colby") Ballard and Jeremiah Harison, quickly adopted the same harassing behavior. JA380.

Fox took steps to improve the misconduct of the male fire fighters assigned to her shift, to no avail. JA381. She distributed the daily assignments lists as ordered by Chief Grimes, only to repeatedly find the assignments go uncompleted

and the lists balled up in the trash.  JA381.  She attempted to arrange shift meals to build camaraderie, but was frequently rebuffed by RJ and Colby, who often coordinated meals with the remainder of the shift, purposefully excluding Fox. JA381.  Fox once again approached Chief Grimes and Assistant Chief Hayes; they instructed Fox not to write up the members of her shift or discipline them.  JA382. None of the male lieutenants working at Leland were subjected to the same disrespect, insubordination, and harassment to which Fox was subjected by the male fire fighters assigned to her shift.  JA382.

Chief Grimes recognized the harassment, yet chose to do nothing to correct it.  After a shift meeting, Chief Grimes told Fox that her shift continued to come to him and "throw her under the bus," intending to cause her trouble, but that he did not intend to fire her.  JA384-85.  Chief Grimes then stated that Fox must feel like she was working in a hostile work environment, to which she agreed.  JA384.  Yet when Fox attempted to discuss the harassment in detail, Chief Grimes shut down the meeting.  JA172-73.  Even worse, he took no action to correct the harassment. JA385.  Indeed, Chief Grimes admitted that he failed to intervene and stop the harassing behavior, claiming that he felt "[he] would have created more – a worse situation for her . . . ."  JA174, 391.

Finally, Fox was aware that male employees at Leland were acting improperly toward other female employees.  JA382.  For example, during an

8

officer's meeting, Lieutenant Jeff Benton called fire fighter Kelly Gore "hooker" in front of all of Leland's officers, including Chief Grimes. JA382. Chief Grimes failed to correct Lieutenant Benton or make it clear that such sexist name calling was inappropriate. JA382.

The continued disrespect, insubordination, and harassment to which Defendants and Fox's shift were subjecting her, coupled with Leland's and Chief Grimes' tacit approval of the misbehavior of male fire fighters towards women in the Department, caused Fox to fear for her personal safety when responding to emergency calls. JA382. While Fox continued to perform all of her job duties, her inability to trust that members of her team would work to ensure her safety in an emergency situation made her apprehensive about going to work, caused her to suffer anxiety, and placed a great deal of stress on both her and her family. JA382-83.

### C. Leland Maintains Specific Policies Meant to Address Issues of Discipline, Poor Performance, and Harassment

Under Leland policy, Fire Chief Grimes is responsible for maintaining discipline and ensuring that all employees follow laws and Department policies and regulations. JA94, 327. All disciplinary matters must be investigated by the Chief or Assistant Chief within 72 hours. JA96, 338, 343. Any disciplinary action, including the lowest form of discipline — oral counseling sessions — *must be documented in writing and included in an employee's personnel file*. JA96,

9

115, 338, 344. The Board implements termination decisions based on the Fire Chief's recommendation.[2] JA97-98.

In addition to being responsible for maintaining discipline, in 2009, the Board gave Chief Grimes the authority to handle all evaluations for employees at the rank of lieutenant and below, with the caveat that he inform the Board if there were any problems with employees and how he had decided to handle those problems. JA91-93, 332-33. During Fox's employment with the Department, employees' performance was evaluated annually. JA111-12. Superior officers were responsible for addressing performance issues directly with the employee ***at the time the problematic performance occurred***. JA113-14, 346. If a performance issue necessitated discipline, the disciplinary action was required to be recorded in writing. JA114. Assistant Chief Hayes, the officer responsible for drafting lieutenant evaluations, reiterated his understanding of this policy and stated that he expects officers to document ***any*** work-related problems or performance issues with their subordinates as well as to provide subordinates with specific examples of problematic behavior when providing a negative performance review. JA344-47.

---

[2] Notably, the Leland Board has followed every termination recommendation ever given by Chief Grimes. JA97-98.

10

Leland's harassment policy prohibits all forms of discrimination and conduct which can be considered harassing, coercive or disruptive. JA99-100, 374-75.[3] Pursuant to that policy, harassment includes "[a]ny conduct that has the purpose of interfering with an individual's work performance and creates an intimidating, or hostile work environment." JA100, 374. Moreover, with respect to sexual harassment, the Department maintains a zero, or no, tolerance policy. JA108. The policy *obligates* the Fire Chief to investigate any claims of harassment, even where an employee does not file a complaint, and take disciplinary action against any employees who are harassing their coworkers. JA103, 106-07, 348-49.

## D.     Chief Grimes and Leland Fired Fox Because She Made Formal Complaints of the Sex Discrimination

On December 1, 2010, after Chief Grimes stated that Fox must feel like she was working in a hostile work environment, he assured her that despite her subordinate officers' efforts, he did not intend to fire her. JA384-85. One week later, Fox submitted a formal complaint of discrimination via email to both Chief Grimes and Assistant Chief Hayes. JA385, 394-95. The complaint sought to correct the discriminatory behavior Fox was experiencing as well as ensure that similar behavior was prevented throughout the Department; for example, Fox suggested in the complaint that the Department conduct diversity training. JA385,

---

[3] Although the Department's harassment policy was not in writing during Fox's employment, Defendants have admitted that the same written policies in place now were followed by the Department during that time. JA104-06.

394-95.  Additionally, Fox offered to meet with both Chief Grimes and the Leland Board to discuss the issue and create a global solution.  JA385, 394-95.

After Chief Grimes failed to respond to Fox's complaint, she followed up with another email on December 21, 2010.  When Chief Grimes again failed to respond, Fox followed up once again with an email on January 2, 2011.  JA385, 394.  Additionally, on January 2, 2011, during a conversation with Kelly Gore about the male fire fighters' treatment of Kelly Gore, Fox stated that she had contacted an attorney and made formal complaints of sex discrimination.  JA385.  Later that day, Gore notified Chief Grimes that Fox had contacted an attorney and was pursuing discrimination complaints.  JA397.

Chief Grimes recommended Fox's termination the ***very next day***.  JA399, 401.  Notably, Chief Grimes failed to notify the Board that Fox had submitted numerous discrimination complaints, and failed to provide the Board with a single document supporting her termination.  JA168-69.  Moreover, Fox's immediate supervisor explicitly testified that he could not identify any conduct between December 1, 2010 and January 3, 2011 that would warrant Fox's termination.  JA368.  Despite the lack of evidence and failure to conduct an independent investigation, the Board unanimously approved Chief Grimes' recommendation.  JA401.  On January 4, 2011, Chief Grimes contacted Fox and asked her to come to

a meeting on January 5, 2011, during which he handed her a termination letter. JA385.

### E.    Fox Exhausted Her Administrative Remedies

On January 28, 2011, Fox submitted an intake questionnaire with supplemental information detailing the discrimination to which she was subjected because of her gender by male personnel at Leland as well as the retaliation engaged in by Chief Grimes.  JA386-87.  Fox prepared and submitted her formal charge to the Equal Employment Opportunity Commission ("EEOC") on February 15, 2011, in which she raised both unlawful discrimination and retaliation.  JA387. The EEOC issued Fox a right to sue letter on October 9, 2012, and she filed the complaint initiating the instant action on December 21, 2012.  JA7-25.

### F.    Defendants' Alleged Justification for Terminating Fox Is Pretextual

In an affidavit submitted to the EEOC, Chief Grimes swore that Fox was fired because of "[Chief Grimes'] past attempts to assist Lt. Fox in improving her performance, as well as her refusal to accept suggestions to improve her performance and her insubordination towards [Chief Grimes in the December 1, 2010 meeting]."  JA155-56, 410.  The record, however, is devoid of any support for these allegations.  First, both Chief Grimes and Assistant Chief Hayes admitted during their respective depositions that Fox did nothing during the December 1, 2010, meeting that was insubordinate.  JA157-58, 362-63.  Moreover, Defendants

admit that Fox did implement Chief Grimes' suggestions, specifically creating

daily assignments for her shift and taking leadership courses recommended by

Chief Grimes.  JA159, 381.  Finally, Chief Grimes admitted to the EEOC

investigator that "Fox *did not have any major work issues* . . . ."  JA170-71, 413

(emphasis added).

### 1.  Fox's June 2010 Performance Evaluation Was Inaccurate

Leland and Chief Grimes nevertheless claimed in briefs filed in the district

court that there were "documented" examples of Fox's allegedly poor

performance; in making this claim they rely almost entirely on a June 2010

performance evaluation which they have since admitted is largely inaccurate and

not supported by evidence.

The June 2010 evaluation, which caused Fox to be placed in a 90-day

probationary period, alleged that she had performance issues, did not meet her

training goals, and did not attend supervisor meetings.  JA269-274, 383.  Fox

immediately submitted a rebuttal, asked the Defendants to identify examples of

poor performance, highlighted clear factual errors, and readdressed the harassing

behavior to which the male fire fighters on her shift were subjecting her.  JA358,

383.  Defendants never met with her to discuss her rebuttal, could not identify a

single example of poor performance, and refused to change her evaluation.  JA151,

356-58, 384.

14

Furthermore, Defendants, as well as Fox's immediate supervisor, admit that the evaluation is inaccurate. For example, Leland acknowledged that although Fox's rating on attendance issues was in error as her two absences were excused in advance, neither the Department nor Chief Grimes ever changed the rating or amended the evaluation. JA137-39, 356-57. Defendants admitted that Fox was never disciplined for allegedly failing to participate in training exercises. JA136-37. Moreover, Assistant Chief Hayes — the management official responsible for drafting Fox's evaluation — cannot recall one duty Fox failed to fulfill. JA355. Indeed, Defendants were unable to identify a single example of a specific assignment that they alleged was not completed by Fox. JA130, 134-35, 137, 269-74, 355. Further, they concede that the majority of the negative comments were based entirely on statements from her subordinate officers — the very same officers that were harassing her and attempting to undermine her credibility. JA145-46, 359-60. Assistant Chief Hayes also admitted that even though he worked "right down the hall" from Lieutenant Fox, he never witnessed any of the alleged issues about which her fire fighters were complaining — the very issues that formed the basis of the erroneous evaluation. JA359-60.

## 2. Fox Successfully Completed Her Probationary Period

Even assuming *arguendo* that Lieutenant Fox's 2010 performance evaluation is not woefully inaccurate, she nevertheless successfully completed the

90-day probationary period imposed by the defendants on September 15, 2010.

JA152, 361, 384.  Indeed, between the performance evaluation meeting that was

held on June 17, 2010, and the end of her probationary period on September 15,

2010, no one at Leland raised a single performance issue with her.  JA385.

Moreover, at no point during her probationary period did a single person file a

written complaint against Fox or make an allegation of misconduct or poor

performance.  JA160, 367-68.

### 3. Leland and Chief Grimes Have Engaged in a Systemic Effort to Backfill Fox's Employment Records to Justify Their Unlawful Actions

Likely recognizing the dearth of evidence supporting any performance

failures, Defendants have "backfilled" Fox's employment records.  Following her

termination, Fox requested a copy of her complete personnel file as well as any

records or documents relied upon by Defendants in making their decision to

terminate her employment.  JA386, 423.  On January 11, 2011, Leland complied

with Fox's request.  JA153, 386, 425-26.  Defendants admit that the documents

provided to Fox were the only ones relied upon in deciding to terminate her.

JA153.  Fox's personnel file was completely clean of any disciplinary or

performance incidents.  JA386, 425-26.  Additionally, the Board was not presented

with any examples of Fox's poor performance during the meeting at which it

approved her termination.  JA166-67.

16

Before the district court, however, in an effort to justify their unlawful actions, Chief Grimes and Leland changed their position, and claimed that the termination decision was based on a few newly discovered incident reports and other written complaints — documents that were never made a part of Fox's personnel files. *See* JA43-44. Significantly, neither Chief Grimes nor Leland ever issued any discipline to Fox as a result of these alleged complaints or performance issues. JA131-34, 136, 148-49, 153-54, 364, 369-72, 386.

The ever-shifting "justification" for Fox's termination reached a new level when Leland and Chief Grimes made a brand-new claim in their summary judgment papers. *See* JA45. There, the Defendants rely on the declaration of Diane Grimes, in which she claims that Chief Grimes decided to terminate Fox on December 1, 2010. JA45. Setting aside the obvious interest Diane Grimes has in these proceedings — as the wife of one of the Defendants, Chief Grimes, and Board member of Leland, the other Defendant — no such statement was previously provided as part of Leland's position statement to the EEOC, making this effort one more attempt to create a record out of whole cloth. JA387.

### 4. Chief Grimes' Inconsistent Statements Establish Genuine Disputes Regarding Material Facts

Finally, the record evidence demonstrates that numerous statements made by Chief Grimes are false, calling into question his overall veracity. For example, Chief Grimes claimed that prior to terminating Fox he spoke with Assistant Chief

17

Hayes about her, and Chief Hayes told him that Fox had problems over the December holidays. JA160-61. However, Assistant Chief Hayes does not recall any complaints that were made about Lieutenant Fox between December 1, 2010, and January 3, 2011, and does not recall even talking to Chief Grimes about Fox during that time period. JA367-68. Chief Grimes also claimed that he and Assistant Chief Hayes investigated Fox's harassment complaints. JA144. However, Hayes testified that he has no recollection of ever being asked to investigate the matter at any point, even after Fox submitted her initial formal complaint on December 8, 2010. JA365-66. Chief Grimes told the EEOC investigator that he never saw Fox's email from December 8, 2010. JA162, 415. However, the documented evidence demonstrates that Chief Grimes actually forwarded the very same email to Leland's attorney approximately 30 minutes after receiving it. JA163, 428-29. Chief Grimes also claimed that he did not see Fox's third email from January 2, 2011, until after he decided to terminate her on January 3, 2011. JA164, 415. However, the documented evidence demonstrates that he read, or at the very least opened, the email on January 2, 2011, at 8:22 pm. JA165, 431.

Similarly, Chief Grimes informed the EEOC investigator that Kelly Gore did not notify him that Fox had contacted an attorney until January 3, 2011, even though that contradicts his own sworn affidavit where he stated that he discussed

the issue with Gore on January 2, 2011, and contradicts Kelly Gore's written statement to him, dated January 2, 2011. JA397, 410, 414. The numerous inconsistencies in Grimes' own statements create genuine disputes of material facts as to the true motivation behind the Defendants' decision to terminate Fox.

## SUMMARY OF THE ARGUMENT

As the Supreme Court has recognized, "Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses." *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006). Here, Fox attempted to do just that — after being subjected to months of harassment as a result of her gender, Fox filed formal complaints with the Department, only to find herself fired immediately thereafter. Fox exhausted her administrative remedies and filed the instant lawsuit to vindicate her rights.

Based on the evidence in the record, the district court erred in granting the Defendants' motion for summary judgment. Summary judgment is inappropriate where there are genuine disputes about material facts. In considering a party's motion for summary judgment the court is required to consider all facts in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of the non-moving party.

In granting Defendants' motion for summary judgment, the district court failed to consider the evidence presented by Fox in her opposition to Defendants'

motion in the light most favorable to her.  The district court erroneously dismissed and ignored evidence Fox presented demonstrating that she had been subjected to a hostile work environment and that the Defendants' purported non-discriminatory reason for terminating her employment was plainly pretext.  The district court's decision mistakenly disregarded evidence that created genuine disputes of material facts and demonstrates that rather than give Fox's evidence the deference it was due, the district court instead improperly weighed the evidence and made credibility determinations in the Defendants' favor.

The district court further erred by failing to find that Fox had presented evidence establishing a *prima facie* case of a hostile work environment and harassment, as well as unlawful retaliation, under both Title VII and 42 U.S.C. § 1983.  Under the *prima facie* case standards that have previously been established by this Court, Fox presented evidence clearly satisfying each of the required elements of both of her hostile work environment and retaliation claims, thereby precluding the district court's granting of summary judgment.

Giving proper deference to the evidence presented by Fox, the only reasonable conclusion is that Fox established a *prima facie* case of a hostile work environment and retaliation under both Title VII and 42 U.S.C. § 1983, and that, at the very least, genuine disputes of material facts remain precluding the district court's grant of summary judgment to Defendants.

## STANDARD OF REVIEW

An appellate court reviews *de novo* the district court's rulings on motions for summary judgment. *Lefemine v. Wideman*, 672 F.3d 292, 297 (4th Cir. 2012). "Summary judgment is only appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Adams v. Trs. of the Univ. of N. Carolina-Wilmington*, 640 F.3d 550, 556 (4th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Additionally, in considering a motion for summary judgment, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Adams*, 640 F.3d at 556 (the court must "construe the evidence in the light most favorable to . . . the party opposing the Defendants' summary judgment motion, and draw all reasonable inferences in his favor.").

## ARGUMENT

### I. The District Court Erred in Concluding on Summary Judgment that Fox Could Not Succeed on a Claim of Retaliation Under Title VII

Title VII makes it unlawful for an employer to take adverse action against an employee for that employee having filed a charge of an unlawful employment practice. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case, a plaintiff must demonstrate "(1) that [she] engaged in a protected activity; (2) that [her] employer

21

took adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003). Once the plaintiff makes this showing, the employer may defend itself by producing evidence of a legitimate non-retaliatory reason. If it does so, the plaintiff must then prove that the defendant's asserted justification is a pretext for retaliation. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Throughout this process, the plaintiff bears the burden of establishing that the "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

The evidence demonstrates that Fox engaged in protected activity when she lodged complaints of unlawful sex harassment with the Fire Chief, that Defendants terminated her after she engaged in that activity, and that her complaints caused her termination. Fox therefore established a *prima facie* case of unlawful retaliation. Moreover, as set forth in the Statement of Facts Section F.1-4, the Defendants' purported non-retaliatory reasons for terminating her were pretext. Thus, the district court erred when it found that the Defendants were entitled to summary judgment on Fox's claim of unlawful Title VII retaliation.

## A. *Fox's Complaints of Discrimination Constitute Protected Activity*

Title VII places protected activities "into two distinct categories: participation or opposition." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Id.* An employee will be found to have engaged in opposition activity by submitting complaints up the chain of command and by "utilizing informal grievance procedures . . . ." *Id.*; *see also Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-544 (4th Cir. 2003) ("Employees are thus guaranteed the right to complain to their superiors about suspected violations of Title VII"). Moreover, there is no obligation that a complaint contains any magic words. *Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011) (finding protected activity occurred where plaintiff sent defendant two emails, one of which was entitled "Harassment Complaint").

Even in situations where the originally filed claim of discrimination is ultimately rejected, this Court recognizes that the employee can still establish an unlawful retaliation claim "provided that she reasonably believed she was the subject of prohibited discrimination." *Bhella v. Surjit*, 91 F. App'x 935, 847 (4th

23

Cir. 2004); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 357 n.1 (4th Cir.

1985) ("An underlying discrimination charge need not be meritorious for a plaintiff

to prevail on a claim of retaliation for opposition to the perceived discrimination),

*overruled in part on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228,

238 n.2 (1989).  In such a situation, the employee must establish: that he or she

"(1) ha[d] a good faith belief that the employer [was] engaging in an unlawful

employment practice; and (2) that the belief [was] objectively reasonable in light

of the facts."  *Coleman v. Loudoun County Sch. Bd.*, 294 F. App'x 778, 781 (4th

Cir. 2008).

As discussed below, Fox presented substantial evidence of a *prima facie*

case of unlawful discrimination and harassment.  *See infra* Section III.  However,

even if Fox's hostile work environment claims are rejected, she still has presented

evidence to demonstrate that she had a reasonable belief she was subjected to

unlawful harassment and discrimination.

One week after Chief Grimes acknowledged that Fox was working in what

amounted to a hostile work environment, yet refused to take any action to correct

it, Fox submitted a formal complaint of discrimination via email to both Chief

Grimes and Assistant Chief Hayes.  JA384-85, 394-95.  Fox's email was titled

"complaint," specifically included the phrase "gender discrimination," and sought

to correct the discriminatory behavior she was experiencing as well as ensure that

24

similar behavior was prevented throughout the Department.  JA385, 394-95.  After

the Defendants refused to respond, Fox re-submitted this same complaint on two

more occasions, the last time being the day before Chief Grimes and the

Fire/Rescue Department decided to fire her.  JA385, 394-95, 399, 401.  Fox also

contacted an attorney about pursuing her Complaint.  Under this Circuit's caselaw,

these actions constitute protected activity.

Furthermore, there is no question that Fox reasonably and in good faith

believed she was subjected to unlawful activity despite the district court's

erroneous finding that she could not meet the "severe and pervasive" standard

required to establish a hostile work environment.  The record evidence

demonstrates that Fox was repeatedly subjected to treatment different than her

male counterparts within the Department.  In contrast to male employees, Fox was:

denied a log-in to the lieutenant's computer, denied the right to meet with superior

officers in an effort to rebut an inaccurate performance evaluation; denied the

ability to obtain certification assistance from the Fire Chief; assigned extra work;

and prevented from presenting performance evaluations to her subordinate

employees.  JA127, 147, 150-51, 378, 384.  Defendants also regularly permitted

her subordinates to bypass the chain of command.  JA82-83, 141, 379-80.

In addition, Fox was regularly subjected to disrespectful and harassing

behavior by both the fire fighters assigned to her shift as well as several of the

male lieutenants, harassment that Leland and Fire Chief Grimes constantly ignored. JA378. Her fellow male lieutenants, as well as subordinate male fire fighters, spread the word around the Department that she should not have been promoted, and was only promoted because of her "plumbing." JA259-60, 378-79. The Fire Chief, and Assistant Fire Chief, permitted the subordinate male fire fighters on her shift to bypass the chain of command and ignore her orders. When Fox specifically sought their assistance in handling the improper behavior of her subordinates, Chief Grimes told her not to discipline or otherwise write up any of the male employees. JA123-24, 379-80, 382. Indeed, even the Fire Chief acknowledged that Fox's working situation must feel like a "hostile working environment," to which Fox certainly agreed. JA384.

Fox's decision to file formal complaints of harassment with Chief Grimes and Assistant Chief Hayes, her prior attempts to discuss with her superiors the issues she was experiencing with the members of her shift, and her agreement with Chief Grimes that she felt that she was in a hostile working environment — all demonstrate that Fox had a subjective belief that she was discriminated against and harassed based on her gender. Likewise, the multiple examples of how she was treated differently than her male counterparts, and Chief Grimes' recognition that Fox's situation was akin to a hostile working environment, show that Fox's belief was also objectively reasonable. Therefore, the evidence presented supports that a

26

reasonable jury could conclude that Fox had a reasonable belief that she was subjected to unlawful discrimination at the time she filed and submitted her complaints.

## B. Fox's Termination Constitutes an Adverse Action

To demonstrate that an employer's action was materially adverse, a plaintiff must show that the action "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzalez*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation omitted). This Court has recognized that when an employee is terminated she has suffered an adverse employment action. *Laughlin*, 149 F.3d at 259; *see also Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) (recognizing termination as an adverse employment action).

It is undisputed that Fox was terminated from her employment with Leland. JA710. Therefore, Fox has suffered an adverse employment action.

## C. Fox's Complaints Caused Chief Grimes and Leland to Terminate Her Employment

To establish her *prima facie* case of unlawful retaliation, Fox must establish that she was terminated because of her complaints of harassment. *Nassar*, 133 S. Ct. at 2534. This Court has "held that '[v]ery little evidence of a causal connection is required to establish a prima facie case [of retaliation] . . . .'" *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) (quoting *Tinsley v. First Union Nat'l Bank*,

155 F.3d 435, 443 (4th Cir. 1998)) (alterations in original). This Court has further explained that "the passage of time alone cannot provide proof of causation *unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'*" *Pepper v. Precision Valve Corp.*, 526 F. App'x 335, 337 (4th Cir. 2013) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (emphasis added). "'[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity.'" *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). The record evidence here demonstrates that Chief Grimes recommended that the Board fire Fox because she persisted in submitting formal complaints about the harassment she suffered at the hands of her co-workers and subordinate employees, harassment the Fire Chief himself condoned when he allowed it to continue, unabated, despite her repeated requests for assistance.

On December 1, 2010, Chief Grimes specifically told Fox that he had no intention of terminating her. JA384-85. From December 1, 2010 through January 3, 2011, the day Chief Grimes recommended Fox's termination, Fox's direct supervisor, Assistant Chief Hayes, cannot identify *any* conduct Fox engaged in that would have warranted her termination. JA368. Indeed, as Fire Chief Grimes admitted to the EEOC coordinator, "Fox did not have any major work issues . . . ."

28

JA170-71, 413. Thus, the *only* activity that occurred between the date Chief Grimes informed Fox that he did not intend to terminate her, and when he recommended her termination, was that she filed three complaints alleging gender discrimination.

Fox's initial complaint was filed on December 8, 2010. JA385, 394-95. Although he never responded to Fox, Chief Grimes forwarded Fox's complaint to Leland's attorney approximately 30 minutes after receiving it. JA163, 428-29. When she did not receive a response to her initial complaint, Fox followed up with another emailed complaint on December 21, 2010, and a third emailed complaint on January 2, 2011. JA385, 428. Additionally, on January 2, 2011, Fox informed a fellow fire fighter that she had contacted an attorney and made formal complaints of sex discrimination. JA385. That fire fighter turned around and informed Fire Chief Grimes that same day that Fox had contacted an attorney. JA397. Chief Grimes decided to fire Fox the *very next day*. JA399, 401. Clearly, the factual record here, including the temporal proximity between Grimes' learning of Fox's protected activity, and his decision to terminate her employment, demonstrate that a reasonable jury could conclude that Fox's complaints caused her termination.

### D. Fox Demonstrated that Defendants' Purported Reasons for Terminating Her Employment Were Pretext

Where an employer has put forward evidence of a purported legitimate, non-discriminatory reason for taking an adverse employment action against an

29

employee, the employee may demonstrate that the employer's reason is pretext "either by showing that [the employer's] explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of . . . discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Therefore, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000).

Both this Court and other Circuits have recognized that different justifications put forward at different times by an employer to support an adverse action taken against an employee is, "in and of itself, probative of pretext." *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001); *see also Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 813 (10th Cir. 2000) ("We are disquieted . . . by an employer who 'fully' articulates its reasons for the first time months after the decision was made."); *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual."); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an

30

adverse employment decision can be evidence of pretext."); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994) (concluding that the a reasonable jury could have found that the inconsistent explanations provided by the employer to support its termination decision were developed over time to counter evidence of discrimination and constituted pretext).

This standard was once again applied in *Wesley v. Arlington County*, 354 F. App'x 775 (4th Cir. 2009). In *Wesley*, this Court concluded that the shifting explanations as to why a Fire Chief did not promote a female employee — including the employer's subsequent attempts to rely on documents that the Fire Chief testified did not impact his decision, as well as an affidavit produced for the first time at the close of the case before the district court demonstrating purported first-hand knowledge of the employee's problematic behavior — were probative of pretext. *Id.* at 782. Defendants "explanations" here are similarly inconsistent and therefore probative of pretext.

In a sworn affidavit submitted to the EEOC, Chief Grimes stated that the Defendants terminated Fox because of: "[Chief Grimes] past attempts to assist Lt. Fox in improving her performance, as well as her refusal to accept suggestions to improve her performance and her insubordination towards [Chief Grimes in the December 1, 2010 meeting]." JA155-56, 410. Yet Fox presented the district court with clear evidence that demonstrates that Defendants' alleged non-retaliatory

31

reasons for terminating her are pretext.  *See* JA306-10.  The district court

committed reversible error, however, when it found that Fox did not establish

pretext and when it failed to consider the evidence in the light most favorable to

Fox, the non-moving party, and instead weighed evidence and made credibility

determinations in favor of the Defendants.

### 1. The District Court Failed to Consider the Facts in the Light Most Favorable to Fox

In *Jacobs v. North Carolina Administrative Office of the Courts*, No. 13-

2212, 2015 U.S. App. LEXIS 3878, *11-12 (4th Cir. Mar. 12, 2015), this Court

recently reiterated the proper standard by which a district court must consider the

facts set forth in a motion for summary judgment.  As this Court found:

> In considering a motion for summary judgment, the district court must "view the evidence in the 'light most favorable to the'" nonmoving party. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." The court therefore cannot weigh the evidence or make credibility determinations.

*Id.* at *11-12 (internal citations omitted); *see also* Fed. R. Civ. P. 56 Advisory

Committee's Note (1963) ("Where an issue as to material fact cannot be resolved

without observation of the demeanor of witnesses in order to evaluate their

credibility, summary judgment is not appropriate.").  In *Jacobs*, this Court

considered the district court's order in its entirety and, in doing so, found that the

decision was in error because the lower court "impermissibly 'credited the

evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion.'" *Jacobs*, 2015 U.S. App. LEXIS 3878 at *15 (quoting *Tolan*, 134 S. Ct. at 1867-68).

The district court here acknowledged that the reasons put forth by the Defendants as to why they terminated Fox consist of the following: insubordination on December 1, 2010; and unsatisfactory job performance, including a failure to follow Chief Grimes' recommendations. JA155-56, 410, 732. The record demonstrates that these allegations have no merit and, combined with other evidence, reveal that the Defendants' asserted justifications were mere pretext for the real reason they fired Fox — because she complained of harassment. As in *Jacobs*, however, the district court here erred by failing to give Fox's evidence the deference it was due, erroneously weighing the evidence, and making credibility determinations in favor of the Defendants. Viewed in the light most favorable to Fox, she presented substantial evidence demonstrating that the Defendants' asserted justifications were mere pretext, and that she was fired because she complained of gender harassment.

## 2. The District Court Ignored Fox's Demonstration that Defendants Invented False Charges

One of the Defendants' justifications for Fox's termination was that she was insubordinate at a December 1, 2010, meeting. JA734. However, the evidence before the district court revealed that Fire Chief Grimes and Assistant Chief Hayes

33

admitted during their depositions that this allegation is false as Fox was not insubordinate. JA158, 362-63. The district court dismissed the fact that the Defendants levied at least one inaccurate charge against Fox as insufficient to support a finding of pretext. JA734. However, coupled with the additional evidence refuting the other alleged non-retaliatory reasons for her termination, the fact that the Defendants put forth at least one admittedly "trumped-up" charge demonstrates that Fox has, at the very least, established a genuine dispute of material fact as to the pretextual nature of Defendants' alleged termination decision.

### 3. The District Court Ignored Evidence that Fox Had Strong Job Performance

In finding that Fox failed to demonstrate that the Defendants' other asserted reason for her termination — poor job performance — was pretextual, the district court once again erred as it disregarded evidence presented by Fox that revealed that justification to be similarly false.

For example, the district court simply ignored the admission of one of the Defendants, Fire Chief Grimes, where he told the EEOC coordinator that "Fox did not have any major work issues . . . ." JA170-71, 413. Similarly, the district court ignored an admission by Fox's immediate supervisor, Assistant Chief Hayes, that in at least the month leading up to Fox's termination, he had not observed any performance issues that would warrant termination. JA368. The district court also

sidestepped evidence that demonstrated that, contrary to Defendants' claim that

Fox was fired, in part, because she did not follow Chief Grimes' suggestions, Fox

did implement his recommendations. JA159, 381 (explaining how she created

daily assignment sheets to distribute to shift members as ordered, and took

leadership courses that had been suggested by Chief Grimes).

Left with little to no evidence actually supporting the Defendants' alleged

justifications, the district court improperly gave credence to a June 2010

performance evaluation as support for the Defendants' asserted justification, even

though Fox presented specific evidence demonstrating that the evaluation is

inaccurate. For example, the record evidence shows that: (1) Defendants admit the

evaluation contains numerous inaccuracies; (2) Defendants admit that they cannot

identify a single example of a duty that Fox failed to fulfill; (3) Defendants admit

that the evaluation is based on statements made by the very employees that Fox

alleged were harassing her; and (4) her immediate supervisor, who worked "right

down the hall" from Fox, acknowledged that he never witnessed any of the alleged

"problems." JA 130, 134-35, 137-39, 145-46, 269-274, 355-57, 359-60.

Moreover, the district court ignored evidence that Fox had successfully completed

the probationary period that resulted from the 2010 evaluation, and had no

documented instances of poor performance after her successful completion of that

period. JA152, 160, 361, 367-68, 384-85.

In its decision, the district court brushes this evidence aside by referring to it as a simple "difference of opinion" between Fox's assessment of her job performance and her employer. JA735-36. However, the evidence, considered in the light most favorable to Fox, goes well beyond a disagreement between the parties. Instead, Fox demonstrated that the Defendants themselves know the evaluation to be at the very least partially incorrect. Given this, it was error for the district court to specifically find that Fox could not demonstrate pretext because "[her] 2010 performance evaluation highlights her inability to effectively lead her subordinates as a critical area of concern." JA734.

### 4. The Defendants' Efforts to "Backfill" Fox's Personnel File Are Further Indicia of Pretext

The district court also mistakenly determined that the fact that the Defendants padded or backfilled Fox's employment records had no bearing whatsoever on whether their decision to terminate Fox was based on something other than their stated motive. JA733.

Following her termination, Fox requested a complete copy of her personnel file *as well as any records or documents relied upon by Defendants in making their decision to terminate her employment*. JA386, 423. Defendants responded by providing Fox with an inventoried list of the documents in her personnel file, and have since admitted that the only documents used to support Fox's termination were those identified on this inventoried list. JA153, 386, 425-26. There is not a

36

single documented performance incident or disciplinary incident in her file. JA386, 425-26. Yet, in their summary judgment motion before the district court, the Defendants switched gears and claimed their decision was also based on alleged incident reports and written complaints, documents that were *never* part of her personnel file and documents the Defendants previously admitted were not considered in making this termination decision. *See* JA43-44.

When viewed in the light most favorable to Fox, the evidence demonstrates that there was no documentation supporting any of the Defendants' purported reasons for her termination at the time of her discharge. Similar to the facts in *Wesley*, the Defendants' attempts to now justify their decision by relying on documents that were never part of Fox's personnel file, and which Defendants conceded were not relied upon to support Fox's termination, is, in and of itself, indicative of pretext. Clearly, this presents evidence that a reasonable jury could conclude supports a finding that Defendants' non-retaliatory reason was after-the-fact pretext.

### 5. The District Court Erroneously Found that Fire Chief Grimes' Claims as to When He Decided to Terminate Fox Were "Undisputed"

The district court's determination that it was uncontested that Chief Grimes decided to terminate Fox around December 1, 2010, and therefore his knowledge of her discrimination complaint played no role in the termination decision, is in

error as it resolved credibility determinations in Defendants' favor, as opposed to

Fox's favor.  JA384-85, 735.

Fox affirmed that Chief Grimes told her, in no uncertain terms on December

1, 2010, that he had no intention of firing her.  JA384-85.  The district court

ignored that testimony, and instead chose to believe a written statement Defendants

introduced for the very first time during summary judgment briefing.  In that

statement, Diane Grimes — wife of Defendant Fire Chief Grimes and Board

Member of Defendant Leland — claims that Chief Grimes told her he was

considering terminating Fox around December 1, 2010.  JA735.  Notably, this

statement is inconsistent with what Chief Grimes told the EEOC Coordinator, that

he made the decision "over the holidays."  JA414.  Making credibility

determinations in the moving party's favor is improper.  *Jacobs*, 2015 U.S. App.

LEXIS 3878 at *11-12.  This error is especially egregious here, where the evidence

also demonstrates that Chief Grimes is willing to lie under oath.  *Compare* JA162,

415 (telling the EEOC coordinator that he did not see Fox's December 8, 2010

Complaint) *with* JA163, 428-29 (email from Chief Grimes forwarding Fox's

complaint to an attorney thirty minutes after she sent it).  Moreover, during his

sworn deposition, Chief Grimes claimed that he then discussed Fox's behavior

with Assistant Chief Hayes after the holidays.  JA160-161.  Yet, Assistant Chief

Hayes testified that he has no recollection of any such discussion.  JA367-68.

Defendants' ever-shifting explanations as to when the decision to terminate Fox was actually made presents further probative evidence that their purported non-retaliatory reasons are merely pretext. At the very least, these inconsistencies as to the timing of Grimes' learning of Fox's protected activity in relation to when he made the determination to terminate her, plainly establish a material fact that is in dispute.

### 6. The Court Ignored Defendants Admitted Duty to Advise Employees of Performance Issues When They Occur

Finally, the district court concluded that Defendants' failure to advise Fox of any of her alleged performance deficiencies prior to her termination could not be used to establish pretext. JA736. Notably, the court found this evidence to be irrelevant because there "is no evidence in the record that defendants' policies required it." JA736. This finding is obviously erroneous. By Defendants own admissions, superior officers are required to address performance issues directly with the employee at the time the problematic performance occurred. JA113-14, 346. Moreover, Leland policy requires all disciplinary matters to be documented in writing and included in an employee's personnel file. JA96, 115, 338, 344. While the failure to follow Department policy alone may not be sufficient to establish that Defendants' alleged non-retaliatory reason was pretext, when coupled with additional evidence and considered in the light most favorable to Fox,

Defendants' failures are further evidence that supports a finding that Defendants' alleged non-retaliatory reason was pretext.

Therefore, by presenting evidence refuting each of Defendants' asserted justifications for Fox's termination, evidence demonstrating that Defendants were willing to create a paper trail of "trumped up" and post-hoc personnel issues, and evidence of Defendants' willingness to lie under oath, Fox presented sufficient evidence such that a reasonable trier of fact could determine that the Defendants' purported non-retaliatory reasons for terminating her employment were pretext, and that they actually fired her because she had the audacity to complain about gender discrimination and harassment.

## II.    Fox Demonstrated a *Prima Facie* Case of Retaliation for Exercising Her First Amendment Rights

Without explanation as to the legal standards required for First Amendment retaliation, or an examination of the facts under these standards, the district court summarily found that Fox had failed to establish a claim for retaliation under Section 1983.  Because the evidence shows that Fox disputed Defendants' arguments, the district court also erred when it granted the Defendants' summary judgment motion as to this claim.

This Court has explained that "[t]he First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."  *Suarez Corp. Indus. v.*

40

*McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). When considering claims asserting

retaliatory discharge in violation of the First Amendment, courts must balance "the

interests of the [the public employee], as a citizen, in commenting upon matters of

public concern and the interest of the State, as an employer, in promoting the

efficiency of the public service it performs through its employees." *Pickering v.*

*Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). In

evaluating claims of retaliatory discharge in violation of the First Amendment, this

Court considers the following factors:

> (1) whether the public employee was speaking as a citizen upon a
> matter of public concern or as an employee about a matter of personal
> interest; (2) whether the employee's interest in speaking upon the
> matter of public concern outweighed the government's interest in
> providing effective and efficient services to the public; and (3)
> whether the employee's speech was a substantial factor in the
> employee's termination decision.

*McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998).

In addition to protecting an individual's right to speech, "[t]he First

Amendment protects the right 'to petition the Government for a redress of

grievances.'" *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448 (4th Cir. 2004)

(quoting U.S. Const. amend. I). The Supreme Court has explained that an

individual's "right to petition is cut from the same cloth as the other guarantees of

that Amendment, and is an assurance of a particular freedom of expression."

*McDonald v. Smith*, 472 U.S. 479, 482 (1985). Therefore, "a public employee's

petition, like [her] speech, is constitutionally protected only when it addresses a matter of public concern." *Kirby*, 388 F.3d at 448. This remains true even where the underlying complaints are not found to violate statutory provisions such as Title VII. *Campbell v. Galloway*, 483 F.3d 258, 270 (4th Cir. 2007).

In submitting her discrimination complaints to Fire Chief Grimes and Leland, Fox was exercising her right to petition as to a matter of public concern. Fox's interest in exercising her First Amendment rights outweighs any alleged impact her exercise had on Defendants' operations. Moreover, her exercise of her rights was the motivating factor in Defendants' decision to terminate her employment.

### A. Fox's Petition, Which Sought to Correct Instances of Sexual Harassment and Require Department-Wide Diversity Training, Presented a Matter of Public Concern

The Supreme Court has stated that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147 (1983). However, it is important to remember that "[p]ublic employees are 'the members of a community most likely to have informed and definite opinions about a wide range of matters related, directly or indirectly, to their employment." *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2500 (2011). By allowing public employees to petition, the airing of issues and

promotion and development of the law is furthered.  *Id.*  Therefore, "[w]hen a

public employee seeks to participate, as a citizen, in the process of deliberative

democracy, either through speech or petition, 'it is necessary to regard the

[employee] as the member of the general public he seeks to be.'"  *Id.* (quoting

*Pickering*, 391 U.S. at 574) (second alteration in original).  Importantly, public

employees' First Amendment protections extend to both public and private

expression.  *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415 n.2 (1979).

     "Speech involves a matter of public concern when it involves an issue of

social, political, or other interest to a community."  *Kirby*, 388 F.3d at 446.  This

Court has explained that "[t]he public-concern inquiry centers on whether 'the

public or the community is likely to be truly concerned with or interested in the

particular expression.'"  *Id.* (quoting *Arvinger v. Mayor of Baltimore*, 862 F.2d 75,

79 (4th Cir. 1988)).  In *Campbell*, this Court concluded that a complaint submitted

by a female police officer to the police chief asserting numerous personal

complaints and grievances about conditions of employment was a matter of public

concern because the complaint raised issues of sexual harassment.  *Campbell*, 483

F.3d at 267-69; *see also Beardsley v. Webb*, 30 F.3d 524, 530-31 (4th Cir. 1994) (a

public employee's First Amendment retaliation claim stemming from her

complaint of personal sexual harassment was properly submitted to a jury).

By presenting a complaint of gender discrimination to Chief Grimes and the Department, Fox was exercising her First Amendment right to petition. JA385, 394-95. Moreover, the content of the complaint presented a matter of public concern as it involved gender harassment and requested that Chief Grimes both correct the discriminatory behavior that Fox was experiencing and ensure that similar behavior was prevented throughout the Department. JA385, 394-95. Indeed, Fox suggested potential Department-wide diversity training and expressed a willingness to meet and provide additional information to both Chief Grimes and, if necessary, the Leland Board so that the problem could be corrected Department-wide. JA385, 394-95.

As the community has a significant interest in knowing that Leland and its officials were not engaging in, or tacitly approving of, gender discrimination, Fox's complaint presented a matter of concern to the citizens served by the Department.

### B. Fox's Right to Seek Redress for Unlawful Discrimination Based on Gender Outweighs Any Purported Department Interest

Once an employee demonstrates that he or she complained about a matter of public concern, the court must then consider "the extent to which [the protected conduct] disrupts the operation and mission of the agency." *McVey*, 157 F.3d at 278. The relevant factors to consider include whether an employee's protected conduct:

> (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006).

Here, the record evidence demonstrates that Fox's supported complaints about gender discrimination did not — and could not — have any negative impact on Department operations.

As discussed above, during Fox's tenure at Leland, the Department maintained a zero tolerance policy regarding sexual harassment. JA104-06, 108. This policy required the Fire Chief to investigate claims of sexual harassment brought to the Department's attention, even when the employee did not file a complaint. JA103, 106, 348-49. As Chief Grimes was obligated to investigate all claims of harassment, the Defendants cannot argue that by filing a complaint Fox in any way impeded the Department's mission or impaired the performance of any employee's duties. Moreover, as Leland maintained a zero tolerance policy regarding sexual harassment, the investigation and elimination of claims of harassment are directly in line with Department policy and would ensure harmonious relations among Department employees.

Importantly, the Defendants did not claim in their summary judgment brief that Fox's complaint caused disruption. JA51-65. Accordingly, Fox's right to seek redress for unlawful gender discrimination outweighs any purported interest that may be presented by Defendants.

### C. Fox's Petition Was the Motivating Factor in Defendants' Decision to Terminate Her Employment

A plaintiff asserting First Amendment retaliation must demonstrate that the exercise of her First Amendment rights "'was a substantial or motivating factor in the employer's decision to terminate [her].'" *Bland v. Roberts*, 730 F.3d 368, 375 (4th Cir. 2013) (quoting *Wagner v. Wheeler*, 13 F.3d 86, 90 (4th Cir. 1993) (internal quotation omitted)).[4] Upon satisfying that burden, a defendant may only avoid liability if it "can demonstrate, by a preponderance of the evidence, that [it] would have made the same employment decision absent the protected expression." *Id.* However, where the employer's purported non-retaliatory reason for terminating the employee is factually in dispute, a genuine issue of material fact will exist and summary judgment is inappropriate. *Worrell v. Bledsoe*, No. 95-2816, 1997 U.S. App. LEXIS 6264, *12-13 (4th Cir. Apr. 3, 1997) (finding that the

---

[4] The "but for" causation standard set forth by the Supreme Court in *Nassar* applies **only** to Title VII retaliation claims and not to claims asserted under, *inter alia*, Section 1983. *Mooney v. Lafayette County Sch. Dist.*, 538 F. App'x 447, 453 n.4 (5th Cir. 2013); *Stoner v. Ark. Dep't of Corr.*, 983 F. Supp. 2d 1074, 1099 (E.D. Ark. 2013) (noting that a *prima facie* case of First Amendment retaliation requires a showing that the constitutionally protected conduct "was a substantial or motivating factor in the defendant's adverse action").

alleged insubordinate conduct that was the employer's alleged basis for the termination was in dispute and created a credibility issue that could allow a jury to conclude that the protected speech was "a 'substantial' or 'motivating' factor for [the plaintiff's] discharge").

As discussed above with respect to Fox's Title VII claim, Fox's exercise of her right to petition was not only a motivating factor in the Defendants' decision to terminate her, it was the but-for factor. *See* discussion *supra* § I.C. Chief Grimes informed Fox on December 1, 2010, that he had no intention to terminate her employment. JA384-85. From December 1, 2010, through January 3, 2011 — the day Chief Grimes recommended Fox's termination — her direct supervisor, Assistant Chief Hayes, admitted that he could not identify any conduct that would warrant Fox's termination. JA368. The only change that occurred between those two dates was that Fox submitted three official discrimination complaints to the Department and Chief Grimes, and a co-worker informed Fire Chief Grimes that Fox had contacted an attorney. JA385, 394-95, 397. Indeed, just one day after receiving Fox's third complaint, and one day after learning that Fox contacted an attorney, Chief Grimes recommended her termination, which was summarily approved by the Leland Board, despite a dearth of evidence or any investigation. JA399, 401.

47

The Defendants have asserted three purported non-retaliatory reasons for terminating Fox: "[Chief Grimes] past attempts to assist Lt. Fox in improving her performance, as well as her refusal to accept suggestions to improve her performance and her insubordination towards [Chief Grimes in the December 1, 2010 meeting]."  JA155-56, 410.  As discussed above with respect to Fox's Title VII claim, Fox has presented evidence that demonstrates that each of the Defendants' alleged non-retaliatory reasons for terminating her are at the very least disputed, if not wholly inaccurate.  *See* discussion *supra* § I.D.

For example, both Chief Grimes and Assistant Chief Hayes admitted during their respective depositions that Fox was not insubordinate.  JA158, 362-63.  Defendants further recognized that Fox implemented Chief Grimes' suggestions.  JA159 (creating daily assignments); JA381 (taking leadership courses).  Finally, Chief Grimes admitted to the EEOC investigator that "Fox did not have any major work issues . . . ."  JA170-71, 413.

The evidence presented demonstrates that genuine issues of material fact exist and that summary judgment is inappropriate.  The district court therefore erred when it found, without any analysis, that Fox had failed to state a claim for unlawful First Amendment retaliation.

48

### III.  Fox Has Demonstrated a *Prima Facie* Case of Hostile Work Environment under Both Title VII and 42 U.S.C. § 1983

Title VII makes it unlawful for an employer to discriminate against any of its employees regarding the terms and conditions of their employment because of the employee's sex.  42 U.S.C. § 2000e-2(a).  To establish a *prima facie* case, a plaintiff must demonstrate: "'(1) unwelcome conduct; (2) that is based on the plaintiff's sex . . . ; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'"  *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000)).

Furthermore, the Equal Protection Clause of the Fourteenth Amendment prohibits state actors from discriminating based on protected classifications, including one's sex.  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  When the state action relates to sex it must satisfy analysis under "heightened scrutiny in order to pass constitutional muster."  *Goulart v. Meadows*, 345 F.3d 239, 260 (4th Cir. 2003).  In practice, this Court has held that "[t]he

49

elements of a claim under § 1981 or § 1983 mirror those of Title VII . . . ."

*McCray v. Pee Dee Reg'l Trnsp. Auth.*, 263 F. App'x 301, 305 (4th Cir. 2008).

Defendants did not dispute that Fox was subjected to unwelcome behavior, or that this unwelcome behavior was imputable to the Defendants.  JA54-60. Therefore, the district court was only called upon to evaluate whether Fox had presented sufficient evidence to allow a reasonable jury to conclude that Fox was subjected to unwelcome conduct because of her sex, and that the conduct rose to the level of being severe or pervasive.  The district court once again erred by failing to view the evidence presented in the light most favorable to Fox and in granting Defendants' motion.

### A. Fox Demonstrated She Was Subjected to Harassment Based on Her Sex

Female employees "may prove sex-based discrimination in the workplace even though [they are] not subjected to sexual advances or propositions." *Ocheltree v. Scollon Prods. Inc.*, 335 F.3d 325, 331 (4th Cir. 2003).  "'The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Onacle v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998).

As discussed above, upon being promoted to lieutenant, Fox was subjected to vastly different treatment than her male counterparts.  She was repeatedly denied a log-in to a computer she needed to use to perform her job duties as a lieutenant

— notably all male lieutenants had access. JA127, 378. Additionally, unlike the

male lieutenants, Fox was denied assistance in completing a certification, was

ordered to perform additional duties not assigned to any of the other lieutenants,

prohibited from presenting performance evaluations to members of her shift, and

had her shift members assigned work without her knowledge. JA378, 380-81. Fox

was also the only lieutenant subjected to insubordination, disrespect, and

harassment by the male members of her shift, harassment the Defendants

intentionally permitted to continue. JA382. As the only difference between Fox

and the other Department lieutenants was her gender, based on the evidence

presented, a reasonably jury could find that Fox was treated differently than her

male counterparts because of her sex.

### B. Fox Was Subjected to Severe and Pervasive Harassment, Altering Her Conditions of Employment, and Creating a Hostile Work Environment

The question of whether harassment rises to the level of being "severe or

pervasive is '*quintessentially a question of fact*.'" *Hoyle v. Freightliner, LLC*,

650 F.3d 321, 333 (4th Cir. 2011) (quoting *Paroline v. Unisys Corp.*, 879 F.2d

100, 105 (4th Cir. 1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.

1990) (en banc)) (emphasis added). Actionable conduct "must create an

objectively hostile or abusive work environment, and the victim must also perceive

the environment to be abusive." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179,

51

184 (4th Cir. 2001). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Onacle*, 523 U.S. at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In assessing whether a work environment is hostile or abusive a court must look at all the circumstances including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 193 (4th Cir. 2000). Importantly, "no single factor is required." *Harris*, 510 U.S. at 23. Additionally, considering "the totality of the circumstances includes conduct directed not at the plaintiff." *Hoyle*, 650 F.3d at 333.

As detailed above, Fox was continuously treated differently than her male counterparts. Despite being made aware of the conduct of male fire fighters, Chief Grimes did nothing to correct the behavior, and even acknowledged that Fox had to feel that she was working in a hostile work environment. JA384. Chief Grimes' refusal to address the unlawful conduct of the Department's male personnel was not limited to just incidents involving Fox. During an officer's meeting a male lieutenant called a female fire fighter a "hooker" in front of all of the Department's

52

officers including Chief Grimes.  JA382.  Incredibly, Chief Grimes took no action to correct the lieutenant or make it clear that such name calling was inappropriate. JA382.  When Chief Grimes was later questioned as to why he did not correct any of the problematic behavior to which Fox was being subjected, he inexplicably asserted that had he attempted to stop the unlawful harassment, "[he] would have created a more – a worse situation for [Fox] . . . ."  JA174, 391.

Due to the nature of the work performed by the Department, and its structure as a paramilitary organization, the constant insubordination and disrespect to which Fox was subjected, combined with members of her shift going outside of her chain of command, undermined her authority and caused Fox to question her ability to rely on the male members of her shift and fear for her safety when responding to emergency calls.  JA74-75, 82, 141, 379-80.  The acknowledgment that this conduct had created a hostile work environment, and Defendants' refusal to address it, or any other instances of gender discrimination in the Department, could allow a reasonable jury to conclude that Fox had been subjected to a severe and pervasive hostile work environment.

### C. The District Court Admittedly Ignored Evidence that Would Enable a Reasonable Jury to Conclude Fox Had Been Subjected to a Hostile Work Environment

In analyzing Fox's hostile work environment claims, the district court again failed to consider the evidence in the light most favorable to Fox as the non-

moving party. The district court concluded that Fox had failed to establish evidence that the harassment to which she was subjected was severe or pervasive, in spite of the court's acknowledgement that "plaintiff's harassment claim extends to [a] myriad [of] other incidents, which are *too numerous* to specifically enumerate herein." JA729-31 (emphasis added). Nevertheless, the district court improperly dismissed these claims by taking the position that they were only supported by Fox's affidavit and that there was no evidence tying this harassment to Fox's sex. JA729. This improper conclusion ignores that Fox repeatedly demonstrated that she was treated differently than the Department's male employees. JA377-78, 380-82. As the only difference between Fox and her male counterparts was her gender, a reasonable jury could certainly infer that the reason she was continually treated differently was because of her gender. Therefore, the district court's refusal to give Fox's evidence the deference that it is due, coupled with the fact that it completely ignored that Fox's affidavit expressly links the differential treatment and harassment to which she was subjected by male fire fighters to her sex, demonstrate that the district court once again improperly weighed evidence and made its own credibility determinations.

## CONCLUSION

The evidence presented clearly demonstrates that genuine disputes of material facts exist. By failing to consider the facts in the light most favorable to

Fox as the non-moving party, the district court erred in granting summary judgment in favor of Defendants. Moreover, when applying the correct standard of review, the record evidence shows that Fox has established a *prima facie* case of retaliation and unlawful discrimination under both Title VII and 42 U.S.C. § 1983. Accordingly, based on the foregoing, Fox respectfully requests that the district court's decision be reversed and that the case be remanded and ordered set for trial.

## REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellant respectfully requests that this Court grant oral argument on the issues presented by this appeal.

June 2, 2015                                Respectfully Submitted,


/s/ Sara L. Faulman
Thomas A. Woodley
Sara L. Faulman
WOODLEY & McGILLIVARY, LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Facsimile: (202) 452-1090
taw@wmlaborlaw.com
slf@wmlaborlaw.com

*Counsel for Appellant*

55

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 15-1364          **Caption:** Fox v. Leland Volunteer Fire Rescue Dep't, Inc. et al.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [✓]   this brief contains ___12, 478___ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [✓]   this brief has been prepared in a proportionally spaced typeface using
    Microsoft Word_____ [*identify word processing program*] in
    Times New Roman 14 pt._____ [*identify font size and type style*]; **or**

    [ ]   this brief has been prepared in a monospaced typeface using
    _____ [*identify word processing program*] in
    _____ [*identify font size and type style*].

(s) Sara L. Faulman_____

Attorney for Appellant_____

Dated: June 2, 2015_____

# CERTIFICATE OF SERVICE

I certify that on this 2nd day of June, 2015, the foregoing document and appendix were served on all parties or their counsel of record through the CM/ECF system. In addition, pursuant to the rules of this Court, the required number of copies of this document and the appendix were served by overnight mail to the Court:

Paul H. Derrick
Cranfill Sumner & Hartzog LLP
5420 Wade Park Blvd, Suite 300
Post Office Box 27808
Raleigh, North Carolina 27611-7808

Melody J. Jolly
Cranfill Sumner & Hartzog LLP
319 N. 3rd Street
Suite 300
Wilmington, North Carolina 28401

/s/ Sara L. Faulman
Sara L. Faulman
WOODLEY & McGILLIVARY, LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Facsimile: (202) 452-1090
slf@wmlaborlaw.com

*Counsel for Appellant*